## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID MORECRAFT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CV-175-TCK-FHM** |
| | ) | |
| **FARMERS INSURANCE COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 105) and

Defendant's Motion for Summary Judgment (Doc. 106).

I.      **Background**

On January 26, 2008, Plaintiff's wife, Alexis Lindsey Morecraft ("Mrs. Morecraft") ran a

stop sign an collided with another car.  As a result of this accident, she and Plaintiff's fourteen-year-

old son, J.M., were injured and transported to Integris Baptist Medical Center in Oklahoma City,

Oklahoma ("Integris") for treatment.   Both Mrs. Morecraft and J.M. also received follow-up

treatment for their injuries after being released from Integris.  At the time of the accident, Plaintiff

had an auto insurance policy with Defendant Farmers Insurance Company, Inc. ("Farmers"), which,

*inter alia*, provided for $100,000 in medical payments coverage ("Policy").   The parties do not

dispute that both Mrs. Morecraft and J.M. constitute insureds under the Policy.  Plaintiff notified

Farmers of the accident on or about January 26, 2008.

Both Mrs. Morecraft and J.M. made numerous claims under the Policy arising out of their

medical treatment following the accident.  Payment for some of these claims was delayed or not paid

in full.  As a result, Plaintiff brought suit against Farmers, claiming breach of contract and breach of the duty of good faith and fair dealing ("bad faith claim").

### A.    Mrs. Morecraft's Medical Claims

The following table summarizes Mrs. Morecraft's claims under the Policy and is undisputed by the parties:

| Date of Service | Provider | Billed Amount | Payment Issued | Payment Amount |
|---|---|---|---|---|
| 1/26/08 | IBMC ER Physicians | $398.00 | 6/10/08 | $398.00 |
| 1/27/08-1/28/08 | Integris Baptist Medical Center | $38,542.04 | 3/19/08 | $38,542.04 |
| 5/5/08-8/4/08 | Orthopedic Association | $582.00 | 8/13/08 | $582.00 |
| 9/25/08 | Orthopedic Association | $173.00 | 10/8/08 | $173.00 |
| 10/7/08 | Orthopedic Association | $2,500.00 | 10/28/08 | $2,500.00 |
| 10/7/08 | Northwest Anesthesia | $800.00 | 10/28/08 | $800.00 |
| 10/7/08 | Integris Baptist Medical Center | $10,896.72 | 7/18/11 | $10,896.72 |
| 11/12/08 | Orthopedic Association | $63.00 | 12/5/08 | $63.00 |
| 1/12/09 | Orthopedic Association | $144.00 | 1/21/09 | $144.00 |
| 3/11/09 | Integris Baptist Medical Center | $36,690.32 | 4/20/09 | $36,690.32 |
| | **TOTALS** | **$90,789.08** | | **$90,789.08** |

Of these claims, the only one that Plaintiff takes issue with is the $10,896.72 paid to Integris on July 18, 2011 for surgery performed on October 7, 2008 ("Integris bill"). This surgery was first recommended by Mrs. Morecraft's physician in August 2008 in order to remove hardware and repair the non-union of her tibia. Plaintiff's counsel requested prepayment from Farmers for the surgery in the amount of $11,000. By letter dated September 8, 2008, Farmers declined prepayment, stating that "the medical expense coverage is a reimbursement benefit" and that Farmers "do[es] not preauthorize nor prepay for services." (Ex. 9 to Pl.'s Resp. to Def.'s Mot. for Summ. J.)

Thereafter, on October 7, 2008, Mrs. Morecraft had the requested surgery at Integris. Two of the other service providers for this surgery – namely, Orthopedic Associates and Northwest Anesthesia – submitted their bills directly to Farmers for payment and were paid in full on October 28, 2008. Integris, however, did not submit its bill for $10,896.72 directly to Farmers. Rather, on January 13, 2009, Integris sent Plaintiff's counsel a $10,896.72 lien for the unpaid bill. Plaintiff was thereafter asked, via discovery requests, to identify any medical bills that had not been paid by Farmers. In discovery responses served on Farmer's counsel on February 26, 2009, Plaintiff identified the unpaid $10,896.72 Integris bill, providing Integris' address, phone number, the date of surgery, and the amount of the bill. In documents produced to Farmer's counsel on March 13, 2009, Plaintiff provided copies of the Integris hospital lien and bill related to the October 7, 2008 surgery. The Integris bill was also listed in June 10, 2010 discovery responses issued to Farmer's counsel and submitted in response to document requests on July 1, 2010.

Two years later, on March 8, 2011, Plaintiff's counsel sent the hospital lien for the Integris bill to Tina M. Duff ("Duff"), a Special Claims Representative at Farmers. Duff responded by letter dated March 30, 2011, requesting that Plaintiff "forward an itemized bill for review and

consideration." (Ex. 21 to Def.'s Mot. for Summ. J.)  Also on March 30, 2011, Farmer's counsel

sent a letter to Plaintiff's counsel, which references inclusion of the Integris bill in discovery

responses and states as follows:

> As we have told you repeatedly, (and which others in your office have admitted they
> know), we as counsel for Farmers in this lawsuit are NOT part of the claims handling
> process.  Thus, notice to us is not notice to [Farmers'] claims department.  If you
> truly want to have this bill considered for payment instead of trying to "set up" and
> "manufacture" a bad faith claim as to this bill, all you have to do is submit it to the
> claims representative for payment.  It is literally that easy.  For ease of reference, the
> claims representative's name is Tina Duff.  Her phone number is [XXX-XXX-
> XXXX], and her mailing address is PO Box 268994, Oklahoma City, OK, 73126-
> 8994.  Be sure to include the claims number which is 1011494293.

(Ex. 16 to Def.'s Mot. for Summ. J.)[1]  On June 20, 2011, Farmers received the additional

information regarding the Integris bill, and Farmers paid Integris in full on July 18, 2011.

**B.      J.M.'s Medical Claims**

The following table summarizes J.M's claims under the Policy and is undisputed by the

parties:

| Date of Service | Provider | Billed Amount | Payment Issued | Payment Amount |
|---|---|---|---|---|
| 1/26/08 | IBMC ER Physicians | $398.00 | 6/10/08[2] | $398.00 |
| 1/26/08 | EMSA | $782.71 | 8/5/08 | $782.71 |

---

[1]  There is no explanation in the record for why this letter was sent by Farmer's counsel given that Plaintiff's counsel had sent the lien to Duff earlier in March.

[2]  The undisputed chart submitted by Farmers includes "2/27/08" as the date this payment was issued.  However, Farmers' payment log indicates this claim was issued on "6/10/08" and paid on "6/18/08."  (*See* Ex. 14 to Def.'s Mot. for Summ. J.)  Further, Farmers states that it issued payment for this bill on "June 10, 2008" elsewhere in its briefing.  (*See* Def's Mot. for Summ. J. 4.)

4

| 1/26/08 | Radiology Associates | $935.00 | 7/25/08 | $935.00 |
|---|---|---|---|---|
| 1/27/08-1/28/08 | Integris Baptist Medical Center | $32,758.93 | 3/24/08 | $32,758.93 |
| 1/27/08 | Orthopedic Associates | $1,292.00 | 2/20/08 | $1,292.00 |
| 1/27/08 | Northwest Anesthesia | $1,040.00 | 4/4/08 | $1,040.00 |
| 1/28/08 | Dr. Sam Jones | $4,300.00 | 4/24/08 6/20/08 | $3,303.52 $996.48 |
| 2/4/08 | Orthopedic Associates | $585.00 | 2/20/08 | $585.00 |
| 2/11/08 | Orthopedic Associates | $60.00 | 2/27/08 | $60.00 |
| 2/15/08 | Oklahoma Anesthesia | $1,495.00 | 4/24/08 | $1,411.81 |
| 2/15/08 | Orthopedic Associates | $1,438.00 | 2/29/08 | $1,438.00 |
| 2/15/08 | Orthopedic Associates | $4,356.00 | 4/24/08 | $3,242.97 |
| 2/15/08 | Empicare | $93.31 | 7/2/08 | $93.31 |
| 2/25/08 | Orthopedic Associates | $60.00 | 3/12/08 | $60.00 |
| 4/21/08 | Orthopedic Associates | $60.00 | 5/9/08 | $60.00 |
| 5/13/08 | Dr. Sam Jones | $2,030.00 | 6/3/08 6/20/08 | $740.00 $1,290.00 |
| 8/18/08 | Orthopedic Associates | $140.00 | 9/9/08 | $140.00 |
| | **TOTALS** | **$51,823.95** | | **$50,627.73** |

5

Of these claims, Plaintiff has cited the following as relevant to his causes of action: (1) Farmers' reductions of Dr. Sam Jones' ("Dr. Jones") bills;[3] (2) Farmers' delay in paying the $398 bill to IBMC ER ("IBMC ER bill"); and (3) Farmers' delay in paying the $935 bill to Radiology Associates ("Radiology Associates bill").

### 1.    Dr. Jones

Dr. Jones, J.M.'s oral surgeon, performed two procedures on January 28, 2008, wherein, *inter alia*, Dr. Jones placed "arch bars" in J.M's mouth. On February 27, 2008, Farmers received a $4,300 bill from Dr. Jones for these procedures ("Dr. Jones' First Bill").[4] Farmers requested additional information from Dr. Jones, which was received on March 10, 2008, and paid a reduced amount of $3,303.52 on April 30, 2008. Farmers' Explanation of Review indicates a reduction of $996.48 from the charges for the second procedure, stating that "[t]he usual [and] customary allowance for this procedure was reduced to 50% as is customary when multiple surgical procedures are performed." (Ex. 46 to Def.'s Mot. for Summ. J.) The Explanation of Review also states that the bill review was performed by Zurich Services Corporation ("Zurich").

During a follow-up visit to Dr. Jones on April 9, 2008, Dr. Jones told Plaintiff and J.M. that he could coordinate the removal of "arch bars" from J.M.'s mouth with the extraction of J.M.'s impacted wisdom teeth. Dr. Jones also advised Plaintiff and J.M. that the wisdom teeth could be extracted in a separate procedure if they desired. Dr. Jones estimated the cost to remove the wisdom teeth at $1,580, which included $1,110 for the extraction and $470 for sedation. Thereafter, on May

---

[3] Farmers also reduced the payments to Oklahoma Anesthesia and Orthopedic Associates, but the reduced amounts were accepted by these providers. These reductions are not cited by Plaintiff as indicative of his bad faith or breach of contract claims.

[4] Each procedure cost $2,150.

13, 2008, Dr. Jones removed the arch bars as well as J.M.'s wisdom teeth.  At the time of this procedure, there was a balance due of $796.48.  This balance represented the difference between (1) the $4,300 for the two surgeries performed on January 28, 2008 and (2) the $3,303.52 paid by Farmers and a $200 payment from Plaintiff.  Plaintiff testified that, because of the balance on the account, Dr. Jones would not remove the arch bars and J.M.'s wisdom teeth without first receiving a payment of $1,100.  Plaintiff therefore paid the $1,100 with his credit card prior to the May 13, 2008 procedure.

Farmers received a $2,030 bill from Dr. Jones for the May 13, 2008 procedure ("Dr. Jones' Second Bill"), which listed three "removal implant[s]" and three "unlisted procedure[s]."  (Ex. 52 to Def.'s Mot. for Summ. J.)  The Explanation of Review for Dr. Jones' Second Bill indicates that Farmers did not pay for any of the "removal implant" charges ($450, $330, and $140, respectively) because "charge was made for a separate procedure and other related services on the same day." (*Id.*)  With regard to the "unlisted procedure," Farmers paid the full amount charged on one of these charges ($370), and fifty percent of the billed amount for the remaining two "unlisted procedure(s)" ($185 each).  The Explanation of Review states that this reduction was made because "[t]he usual [and] customary allowance for this procedure was reduced to 50% as is customary when multiple surgical procedures are performed."  Thus, the total amount initially paid by Farmers for Dr. Jones' Second Bill was $740.  (*See id.*)

Plaintiff testified that he had a conference call with Dr. Jones' office and Anginette Bitsie ("Bitsie") of Farmers regarding the reductions made by Farmers to Dr. Jones' bills, although he could not remember the date of said conversation.  According to Plaintiff's deposition testimony, Bitsie told Plaintiff that Dr. Jones' office wasn't filing the correct form and that Dr. Jones' billing

7

amounts were too high. (Ex. 5 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 127:8-25-128:20.)  On

June 20, 2008, Farmers issued two checks to Plaintiff's counsel for the remaining amounts owed on

Dr. Jones' bills:[5] (1) a $996.48 check for the remainder of Dr. Jones' First Bill; and (2) a $1,290

check for the remainder of Dr. Jones' Second Bill.  (Ex. 59 to Def.'s Mot. for Summ. J.)  Plaintiff's

counsel rejected these checks, returned them to Farmers, and requested that Farmers write

"undisputed amounts" on them.  (Ex. 60 to Def.'s Mot. for Summ. J.)  Farmers asked for an

explanation for the requested notation, but no such explanation was provided by Plaintiff's counsel.

Farmers then reissued the checks on July 25, 2008, and these checks were cashed by Morecraft.

### 2.    IBMC ER Bill

Farmers received a faxed copy of the IBMC ER bill on April 7, 2008.[6]  On April 9, 2008,

Farmers sent a letter to IBMC ER requesting that it provide additional information, including an

itemized bill and details regarding the physician/provider rendering service.  Farmers sent another

letter to IBMC ER on May 9, 2008, attaching the April 9, 2008 letter and "again requesting billing

in regards to the date of service."  (Ex. 28 to Def.'s Mot. for Summ. J.)  The May 9, 2008 letter also

states that Farmers had "received notification from [Plaintiff] that [IBMC ER had] sent this issue

to collections" and that "[t]his needs to be resolved as soon as possible."  (*Id.*)  Farmers received the

requested information from IBMC on June 4, 2008, and issued payment in full on June 10, 2008.

Also relevant to the IBMC ER bill is a copy of the IBMC ER bill provided by Plaintiff, which

includes the following handwritten notation: "2nd Fax 5/8/08 1st Fax 2/18/08." (Ex. 4 to Pl.'s Resp.

_____

[5] Plaintiff's counsel became involved in the claims adjustment process on June 10, 2008, when he sent a letter to Farmers advising that Plaintiff was represented by counsel.  (*See* Ex. 57 to Def.'s Mot. for Summ. J.)

[6] The claim notes accompanying the fax states "Sender IBMC" in the comments section, suggesting that this fax was sent directly from IBMC ER.

to Def.'s Mot. for Summ. J.)  Also written on the copy of the bill is "Has been sent to collections 1011494293-1-2." (*Id.*)  Plaintiff argues this exhibit demonstrates that he faxed the IBMC ER bill to Farmers on February 18, 2008 and May 8, 2008.

### 3.      Radiology Associates Bill

Farmers' records indicate that it received a bill from Radiology Associates for $935 on May 17, 2008.  This bill was associated with services rendered on January 26, 2008.  Farmers requested additional information from Radiology Associates on May 19, 2008, and issued payment in the amount of $935 on June 20, 2008.  Plaintiff has submitted a copy of the Radiology Associates bill, which includes the following hand-written notation: "1011494-1-4."  (Ex. 6 to Pl.'s Resp. to Def.'s Mot. for Summ. J.)

### C.      Miscellaneous Claims

In supplemental discovery responses on July 19, 2011, Plaintiff claimed expenses for the following: (1) doctor's care and prescription drugs related to his medical treatment for anxiety; (2) credit card interest that Plaintiff incurred by having to pay for some medical bills before he was reimbursed by Farmers; and (3) six weeks of household help (at $250 per week).  It is undisputed that Plaintiff has not submitted bills for these items to Farmers for adjustment.

## II.      Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.*  However, the party seeking

to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

This legal standard does not change where, as here, the parties file cross-motions for summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* Where the parties file cross-motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Id.* Cross-motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

## III.    Farmers' Motion for Summary Judgment

Farmers moves for summary judgment on Plaintiff's claims for breach of contract, bad faith, and punitive damages.

### A.      Breach of Contract Claim

Farmers moves for summary judgment on Plaintiff's breach of contract claim, arguing that it met its obligations under the Policy. Plaintiff argues that summary judgment is inappropriate on the breach of contract claim because Farmers breached the terms of the Policy when it: (1) declined

pre-payment of Mrs. Morecraft's October 7, 2008 surgery at Integris;[7] (2) delayed payment of the (a) October 7, 2008 surgery at Integris, (b) the IBMC ER bill, and (c) Radiology Associates bill; and (3) initially reduced Dr. Jones' bills.   Plaintiff further argues that his breach of contract claim is supported by his request for payment of miscellaneous bills, including reimbursement for medical treatment for anxiety, credit card interest, and household help.

### 1.    Policy Language

The Policy states as follows with regard to "Medical Expense Coverage" – "We will pay reasonable expenses for necessary medical services furnished within two years from the date of the accident because of bodily injury sustained by an insured person." (Ex. 1 to Def.'s Mot. for Summ. J. at 23.)  The Policy defines an "insured person" as, *inter alia*, "You or any family member while occupying, or through being struck by, a motor vehicle or trailer, designed for use on public roads." (*Id.*)  "Reasonable expenses" is defined under the Policy as follows: "Reasonable expenses means expenses which are usual and customary for necessary medical services in the county in which those services are provided.  We will reimburse you for any reasonable expenses already paid by you." (*Id.*)  The Policy further states that "[d]etermination of what are reasonable expenses and/or necessary medical services may be submitted to an independent medical consultant."  (*Id.* at 24.)

The Policy sets for the following notice requirements and duties of an insured:

Notice

---

[7]  It is unclear from the briefing whether Plaintiff contends Farmers' refusal to pre-pay for the October 7, 2008 surgery constitutes a breach of the Policy in addition to bad faith.  In an abundance of caution, the Court will address it within the context of both claims.

In the event of an accident, or loss, notice must be given to us promptly.  The notice must give the time, place and circumstances of the accident, or loss, including the names and addresses of injured persons and witnesses.

Other Duties
A person claiming any coverage of this policy must also:
1.     Cooperate with us and assist us in any matter concerning a claim or suit.
2.     Send us promptly any legal papers received relating to any claim or suit.
3.     Submit to physical examinations at our expense by doctors we select as often as we may reasonably require.
4.     Authorize us to obtain medical and other records.
5.     Provide any written proofs of loss we require.
6.     Notify policy within 24 hours and us within 30 days if a hit-and-run motorist is involved and an uninsured motorist claim is to be filed.
7.     If claiming car damage coverage:
       a.     Take reasonable steps after loss to protect the vehicle and its equipment from further loss. We will pay reasonable expenses incurred in providing that protection.
       b.     Promptly report the theft of the vehicle to the police.
       c.     Allow us to inspect and appraise the damaged vehicle before its repair or disposal.
8.     Submit to examination under oath upon request.

(Ex. 1 to Def.'s Mot. for Summ. J. at 6-7.)  The Policy defines "us" as "the Company named in the Declarations which provides this insurance."  (*Id.* 6.)  The Declarations page lists "Farmers Insurance Company, Inc." as the insurer.  (*Id.* 2.)

**2.     Denial of Pre-payment for October 7, 2008 Surgery**

Plaintiff argues that Farmers had an "unconditional obligation . . . to pay the reasonable medical expenses of [its] insureds," including pre-payment of medical services.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. 9-10.)  Farmers, on the other hand, contends that the Policy provides a reimbursement benefit and that Farmers' obligation does not arise until *after* medical services have been furnished.  In addressing this issue, the Court turns to the language of the Policy, which is to be interpreted "according to [its] plain meaning" and "accepted in [its] plain, ordinary and popular sense."  *Idg, Inc. v. Cont'l Cas. Co.*, 275 F.3d 916, 921 n.2 (10th Cir. 2001) (internal citations

omitted) (applying Oklahoma law).  "If a policy term is ambiguous -- *i.e.*, where it is susceptible to two or more different meanings – it will be construed against the insurer."  *Id.* (internal citations omitted).  "The determination of whether policy language is ambiguous is a matter of law[.]"  *MIC Prop. and Cas. Ins. Cop. v. Int'l Ins. Co.*, 990 F.2d 573, 576 (10th Cir. 1993).

In this case, the Court finds that the description of coverage in the Policy is unambiguous, as it is not "susceptible to two interpretations on its face[.]"  *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002) (internal citations omitted).  Specifically, the Policy states that Farmers "will pay reasonable expenses for necessary medical services *furnished* within two years from the date of the accident because of bodily injury sustained by an insured person."  (Ex. 1 to Def.'s Mot. for Summ. J. at 23 (emphasis added).)  The use of the word "furnished" in the Policy clearly indicates that Farmers' obligation to pay medical expenses arises *after* the medical services have been provided, eliminating any duty to pre-pay for services that have yet to occur.  Further, although not part of the Policy, another document provided by Farmers to Plaintiff – namely, the cover letter sent to Plaintiff with the Application for Benefits and Proof of Loss – is consistent with this finding.  (*See* Ex. 6 to Pl.'s Mot. for Partial Summ. J. (providing the following explanation of Plaintiff's coverage: "Medical Expense coverage is a reimbursement benefit.  That means that we will not be able to make any advance payments on the claim.")); *see also* Lee R. Russ and Thomas F. Segalla, 11 Couch on Insurance § 158.10 ("The medical payments provision most commonly requires that the insured have 'incurred' or 'actually incurred' medical expenses. . . . Stated otherwise, expenses are incurred within medical coverage only when one has become obligated to pay for them.").)

Notably, Plaintiff has failed to point to any other provision in the Policy that would contradict this reading of the word "furnished" or suggest that Farmers has a duty to pre-pay for

13

medical services.   Plaintiff instead relies on the case of *Guerrier v. Mid-Century Insurance Company*, 663 N.W.2d 131 (Neb. 2003), and argues that *Guerrier* establishes that "Farmers had an unconditional obligation to pay reasonable medical expenses and that the Medical Expense Coverage [provided in the Policy] is not a reimbursement benefit."  (Pl.'s Mot. for Partial Summ. J. 9.)  The Court finds *Guerrier* inapposite to this case. In *Guerrier*, the Supreme Court of Nebraska determined whether an insurer was obligated to pay an insured's medical expenses when the expenses had already been paid by workers' compensation.   The court found that the insurance company was obligated to pay "regardless of whether those expenses [had] already been paid by another."  *Id.* at 136.   Stated simply, the issue in *Guerrier* is not presented in this case, and *Guerrier* offers no support for the proposition that Farmers is obligated to pre-pay for medical expenses under the Policy.   For these reasons, and given the clear language in the Policy, the Court finds that Farmers did not breach the Policy when it denied pre-payment for Mrs. Morecraft's surgery.

### 3.   Delayed Payments

Plaintiff next argues that Farmers breached the Policy when it delayed payment for the Integris bill, the IBMC ER bill, and the Radiology Associates bill.  When, as here, "a contract fails to specify the amount of time in which a party thereto must perform, contract law allows that party a reasonable time to so perform his obligations under the contract."  *Colson Tennessee, Inc. v. Am. Crane, Inc.*, No. 06-CV-280-JHP, 2007 WL 2703108, at *3 (E.D. Okla. Sept. 14, 2007) (citing *I.C. Gas Amcana, Inc. v. J.R. Hood*, 855 P.2d 597, 600 (Okla. 1992)); *see also* Okla. Stat. tit. 15, § 173 (providing that "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed").

The record reflects the following time line of events with respect to the bill for Mrs. Morecraft's October 7, 2008 surgery at Integris: (1) Integris requested prepayment from Farmers for the surgery, which was denied in September 2008; (2) Integris did not sent the bill directly to Farmers after the surgery; (3) Integris sent Plaintiff's counsel a $10,896.72 lien for the unpaid bill on January 13, 2009; (4) Plaintiff listed the unpaid $10,896.72 Integris bill in discovery responses served on Farmer's counsel on February 26, 2009 and June 10, 2010; (5) Plaintiff produced copies of the Integris bill and lien to Farmer's counsel on March 13, 2009 and July 1, 2010; (6) Plaintiff's counsel sent the hospital lien for the unpaid $10,896.72 Integris bill to Duff, a claims representative at Farmers, on March 8, 2011; (7) Duff responded by letter dated March 30, 2011, asking Plaintiff to "forward an itemized bill for review and consideration,"  (Ex. 21 to Def.'s Mot. for Summ. J.); (8) Farmers' counsel sent a letter to Plaintiff's counsel on March 30, 2011, stating that "we as counsel for Farmers in this lawsuit are NOT part of the claims handling process" and directing Plaintiff's counsel to submit the bill to Farmers' claims representative for payment; (8) Farmers received the additional information regarding the Integris bill on June 20, 2011; and (9) Farmers paid Integris $10,896.72 on July 18, 2011.

Plaintiff argues it did not have to provide notice of the Integris bill *directly* to Farmers, and that Farmers was provided notice of the Integris bill when (1) Plaintiff's counsel requested pre-payment for Mrs. Morecraft's surgery; and (2) Plaintiff provided the Integris bill to Farmers' litigation counsel in response to discovery requests.  Farmers, on the other hand, argues that neither of these actions constitutes notice of the Integris bill as required under the Policy.  Rather, Farmers argues that the timeliness of its payment to Integris should be assessed in relation the March 8, 2011

15

letter to Duff from Plaintiff's counsel, which constituted the first submission of the Integris bill directly to Farmers.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Farmers paid the $10,869.72 Integris bill within a reasonable time. Although such payment was not made until over two years after the surgery was performed, the Court finds that notice was not officially provided to Farmers until Plaintiff's counsel sent the hospital lien to Duff in March 2011. First, the pre-payment request, made in August 2008, did not constitute notice of the bill, as the surgery had yet to occur at this point. Second, the Court is unwilling to find that Plaintiff provided notice to Farmers in the discovery responses served upon Farmers' litigation counsel. The only notice provision in the Policy states that notice must be provided to "the Company named in the Declarations which provides this insurance" – namely, Farmers. (*See* Ex. 1 to Def.'s Mot. for Summ. J. at 2 & 6.) There is no indication in the language of the Policy, or from the facts in the record, that Farmers' litigation counsel "customarily accepted . . . notices on [Farmers'] behalf," or that Farmers had given its litigation counsel "authority to receive notice of claims on its behalf." *Fleming, Ingram & Floyd, P.C. v. Clarendon Nat'l Insur. Co.*, No. CV 108-075, 2009 WL 5166256, at *6 (S.D. Ga. Dec. 29, 2009) (considering same in finding that notice of claim made to insurance agency did not constitute notice to insurance company when policy language stated that a claim must be reported to insurance company); *see also Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602, 607 (Ga. Ct. App. 2007) (finding notice to insurance agent did not constitute notice to insurance company where insurance policy required notification to insurer and the policy did not suggest that insured could notify agent instead of insurer).

16

Further, Plaintiff has failed to submit, nor could the Court locate, any legal authority supporting the assertion that an insurance claim can be made via discovery responses served on the insurance company's litigation counsel.  The closest authority found by the Court involved an insurance company's in-house counsel. *See Banuchis v. Gov't Emp. Insur. Co*, 14 A.D.3d 581 (N.Y. App. Div. 2005).  In *Banuchis*, the court found that notice to an insurance company's in-house counsel constituted notice to the insurance company because the in-house counsel was an employee of the insurance company and handled many of the claims submitted to the insurance company. *See id.* at 582.  However, litigation counsel, unlike in-house counsel, are not employees of the insurance company and do not regularly handle claims submitted to the insurance company, giving additional support to the Court's finding in this case.  For these reasons, the Court assesses the reasonableness of the July 2011 payment to Integris in light of the first notice of the $10,869.72 Integris bill made directly to Farmers – namely, the March 8, 2011 letter to Duff.  The record reflects that Duff timely responded to receipt of the lien by requesting the applicable billing information and that Farmers procured full payment of the Integris bill within a month of receiving this documentation.  The Court finds the timing of such payment reasonable and therefore holds that there is no genuine issue of material fact as to the timeliness of Farmer's payment of the Integris bil.

Similarly, the Court finds no genuine issue of material fact as to the reasonableness of the timing of Farmer's payment of the IBMC ER bill.  Farmers' records indicate that it received the IMBC ER bill on April 7, 2008, requested supporting documentation on April 9, 2008 and May 9, 2008, received the requested information from IBMC on June 4, 2008, and issued payment in full on June 10, 2008.  Plaintiff argues that said payment was untimely, however, because a copy of the IMBC ER bill suggests that it was faxed to Farmers as early as February 18, 2008.  The exhibit

relied upon by Plaintiff, however, merely includes a handwritten notation of "2nd Fax 5/8/08 1st Fax 2/18/08" and does not provide any information about who faxed the bill or to whom.  Nor does Plaintiff cite to any other evidence supporting his argument that the bill was faxed to Farmers prior to April 2008.  The handwritten notation, standing alone, does not demonstrate that Farmers received the IBMC bill in February 2008, and the Court will therefore assess the timeliness of the payment pursuant to Farmers' receipt of the bill on April 7, 2008.  Given Farmers' prompt request for additional information on April 9, 2008 and prompt payment after said information was received, the Court finds no unreasonable delay in the payment of the IBMC ER bill.

Finally, with regard to the Radiology Associates bill, Farmers' records indicate that it received said bill on May 17, 2008, requested additional information on May 19, 2008, and issued payment in full on June 20, 2008.  Plaintiff disputes the contention that Farmers did not receive the bill until May 17, 2008, citing to: (1) a copy of the bill, which includes a hand-written claim number, (*see* Pl.'s Resp. to Def.'s Mot. for Summ. J. 5); and (2) Plaintiff's testimony wherein he stated that it was his practice to fax the bills to Farmers as he received them, (*see id.*).  The Court finds that this evidence does not create a genuine issue of disputed fact as to the date Farmers received the bill.  First, there is no information in the record as to when the hand-written claim number was added to the bill, or by whom.  It is thus unclear to the Court how the mere existence of a hand-written claim number on a copy of the Radiology Associates bill demonstrates that Farmers received the bill before May 17, 2008.  Further, Plaintiff's conclusory testimony that he generally faxed bills to Farmers is not specific to the Radiology Associates bill and, standing alone, does not demonstrate that Farmers received the bill prior to May 17, 2008.  Rather, the evidence in the record indicates

that Farmers received the bill on May 17, 2008, and paid the bill within one month of receiving supporting documentation.  The Court finds the timing of such payment reasonable.

### 4. Reduction of Dr. Jones' Bills

Plaintiff argues Farmers breached the Policy when it reduced Dr. Jones' bills.  In support of this contention, Plaintiff generally argues that "Farmers relied on medical bill reductions generated by a computer database in India to determine what would be paid on [Plaintiff's] claim," (Pl.'s Resp. to Def.'s Mot. for Summ. J. 14), and that such practice was "arbitrary and improper," (*id.* 18). The only evidence cited by Plaintiff in support of this contention, however, is the deposition testimony of Martha Koehn ("Koehn"), a Farmers claims handler, wherein Koehn provided the following testimony regarding Zurich: (1) in order to assess medical charges, Zurich compared the charges to other providers in the same geographic area; (2) she did not know the precise geographic area used by Zurich; and (3) beginning in January 2008, there was only one nurse liaison to Zurich that she contacted with inquiries regarding a reduced bill.  Notably, Koehn's testimony has nothing to do with the specific reductions made to Dr. Jones' bills.

The Court finds that Plaintiff has failed to meet his burden of demonstrating "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  First, Plaintiff does not identify a specific provision of the Policy that he contends Farmers breached when it initially reduced Dr. Jones' bills before paying them in full.  The Policy provides that "[d]etermination of what are reasonable expenses and/or necessary medical services may be submitted to an independent medical consultant" and outlines an arbitration process if Farmers and the insured do not agree on the amount of payment.  (Ex. 1 to Def.'s Mot. for Summ. J. 24.)  Thus, the mere fact that Farmers, via Zurich, initially reduced Dr. Jones' bills and that Plaintiff did not agree with such reductions

19

does not, standing alone, evidence a breach of the Policy, as the Policy contemplates such a situation.

Second, the evidence offered by Plaintiff in support of his argument – namely, Koehn's deposition testimony – does nothing to prove that it was unreasonable or somehow a breach of the Policy for Farmers to rely on Zurich's reductions of Dr. Jones' bills.  Koehn's testimony provides very little information about Zurich and its process of reducing bills for Farmers, and, as noted above, the cited testimony has no relation to the initial reduction of Dr. Jones' bills.  The Court makes no ruling as to the propriety of Farmer's system of submitting bills to Zurich, but simply holds that Plaintiff has failed to offer any evidence demonstrating that such process constitutes a breach of the Policy in this case.

### 5.       Plaintiff's Miscellaneous Bills

As noted above, Plaintiff claims expenses for the following: (1) doctor's care and prescription drugs related to his medical treatment for anxiety; (2) credit card interest that Plaintiff incurred by having to pay for some medical bills before he was reimbursed by Farmers; and (3) six weeks of household help (at $250 per week).  Farmers moves for summary judgment as to any breach of contract claim based on these bills, arguing (1) the bills have not been provided for adjustment; and (2) Plaintiff does not qualify as an "insured person" under the Policy because he was not "occupying" or "struck by" a motor vehicle.  (Def.'s Mot. for Summ. J. 16 (citing Ex. 1 to Def.'s Mot. for Summ. J. at 23).)  In response, Plaintiff states as follows:

> Without waiving his right to recover the amounts owed to [Plaintiff] for his unpaid bills in his breach of contract claim, Plaintiff submits that he could also recover these damages under his claim for bad faith. [Plaintiff's] unpaid bills are a necessary element of damages for his claim of bad faith.  Accordingly, it is improper to grant summary judgment against these bills under Plaintiff's claim for [b]reach of [c]ontract.

(Pl.'s Resp. to Def.'s Mot. for Summ. J. 12.)

The Court finds summary judgment proper as to any breach of contract claim based on the above-listed bills.  First, as noted by Farmers, it is undisputed that these bills have not been submitted for adjustment, and Farmers' failure to pay for such bills can therefore not constitute a breach of the Policy.  Further, Plaintiff offers no authority for the proposition that it would be "improper to grant summary judgment against these bills under Plaintiff's claim for [b]reach of [c]ontract" because said bills are allegedly "a necessary element of damages for his claim of bad faith." (*Id.*)

## B.    Bad Faith Claim

In Oklahoma, "an insurer has an implied duty to deal fairly and act in good faith with its insured," and violation of this duty gives rise to an action in tort.  *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 905 (Okla. 1977).   "The essence of the tort of bad faith . . . is the unreasonableness of the insurer's actions."  *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1360 (Okla. 1989).  "The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage."  *Tran v. Nationwide Mut. Insur. Co.*, 11-CV-0374-CVE-FHM, 2012 WL 380359, at *4 (N.D. Okla. Feb. 6, 2012).  Specifically, "[t]he insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'"  *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) (citing *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984)).  "The decisive question is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the

policy.'" *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991).  To make out a prima

facie case against an insurance company for a bad faith delay in payment, a plaintiff must establish

that:

> (1) the claimant was entitled to coverage under the insurance policy at issue; (2) the
> insurer had no reasonable basis for delaying payment; (3) the insurer did not deal
> fairly and in good faith with the claimant; and (4) the insurer's violation of its duty
> of good faith and fair dealing was the direct cause of the claimant's injury.

*Toppins v. Minn. Life Ins. Co.*, No. 11-5062, 2012 WL 313612, at *2 (10th Cir. Feb. 2. 2012) (citing

*Beers v. Hillory*, 241 P.3d 285, 292 (Okla. Civ. App. 2010)); *see also McCorkle v. Great Atl. Ins.*

*Co.*, 637 P.2d 583, 587 (Okla. 1981) (noting plaintiff has burden of proof).  "Where an insurer has

demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law and the

insurer is entitled to summary judgment."  *Tran*, 2012 WL 380359, *5 (internal citations omitted).

Farmers moves for summary judgment as to Plaintiff's bad faith claim, first arguing that

failure of Plaintiff's breach of contract claim automatically extinguishes Plaintiff's bad faith claim.

(*See* Def.'s Mot. for Summ. J. 23.)  Specifically, Farmers relies on *Davis v. GHS Health*

*Maintenance Organization, Incorporated*, 22 P.3d 1204 (Okla. 2001), wherein the Oklahoma

Supreme Court stated that "a determination of liability under the contract is a prerequisite to a

recovery for bad faith breach of an insurance contract."  *Id.* at 1210.  For the same reasons outlined

by another court in this district, the Court rejects such argument.  *See Owens v. Res. Life Insur. Co.*,

No. 06-CV-0346-CVE-FHM, 2007 WL 2746908, *1 (N.D. Okla. Sept. 18, 2007) (rejecting

argument that *Davis* "implies that the insured must have a viable breach of contract claim to proceed

with a claim for bad faith" and denying motion to certify such question to the Oklahoma Supreme

Court) (stating that although a plaintiff "certainly must show contractual liability at the time the

claim was presented to the insurer . . . *Davis* does not create a new rule that plaintiff must have a co-

22

existent breach of contract claim for a bad faith claim to proceed"); *see also Roemer v. State Farm Fire and Cas. Co.*, 06-CV-0663-CVE-PJC, 2007 WL 527863, at *5 (N.D. Okla. Feb. 15, 2007) (holding *Davis* does "not create a requirement that a plaintiff must have a cognizable breach of contract claim to bring a bad faith claim against an insurer").

Farmers also seeks summary judgment on Plaintiff's bad faith claim because "there is no evidence adduced to establish any conduct by Farmers was unreasonable." (Mot. for Summ. J. 22.) In response, Plaintiff sets forth the same arguments as he asserted in the context of his breach of contract claim. Specifically, Plaintiff argues Farmers acted in bad faith when it: (1) declined pre-payment of Mrs. Morecraft's October 7, 2008 surgery at Integris; (2) delayed payment of the (a) October 7, 2008 surgery at Integris, (b) the IBMC ER bill, and (c) Radiology Associates bill; and (3) initially reduced Dr. Jones' bills. The Court has already addressed these arguments in the context of Plaintiff's breach of contract claim, and, for the same reasons outlined above, finds that Plaintiff has failed to create a genuine issue of material fact as to the reasonableness of Farmers' actions sufficient to support his bad faith claim *See supra* Section III.A. The Court therefore grants summary judgment as to this claim.

### C.    Punitive Damages

Under Oklahoma law, an insurer may be subjected to punitive damages for breach of its duty to deal fairly and in good faith with its insured only if a jury finds by clear and convincing evidence that the insurer's breach was either reckless or intentional and with malice. *See Crews v. Shelter Gen. Ins. Co.*, 393 F. Supp. 2d 1170, 1179 (W.D. Okla. 2005). Because the Court finds summary judgment appropriate as to Plaintiff's bad faith claim, the Court grants summary judgment as to Plaintiff's claim for punitive damages as well. *See Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870,

893 (10th Cir. 2006) (applying Oklahoma law) (stating that a "finding of punitive damages necessarily entails a finding of bad faith" and reversing the punitive damages verdict after finding "the evidence insufficient to support bad faith").

IV.    **Plaintiff's Motion for Partial Summary Judgment**

In his Motion for Partial Summary Judgment, Plaintiff first seeks an order finding that the Medical Expense Coverage within the Policy is not a reimbursement benefit, thereby requiring coverage for pre-service payments.  For the reasons outlined above, the Court denies summary judgment on such grounds. *See supra* Section III.A.2.  Plaintiff also seeks a finding that he was not required to "notify Farmers directly of each individual medical bill."  (Pl.'s Mot. for Partial Summ. J. 11.)  In support of this contention, Plaintiff argues he provided adequate notice to Farmers of the $10,896.72 Integris bill when his counsel requested pre-payment for the surgery and provided discovery responses to Farmers' litigation counsel identifying the bill.  Again, the Court rejects these arguments for the same reasons outlined above, *see supra* Section III.A.3, and therefore denies Plaintiff's Motion for Partial Summary Judgment.

V.    **Conclusion**

For the reasons outlined here, Plaintiff's Motion for Partial Summary Judgment (Doc. 105) is DENIED, and Defendant's Motion for Summary Judgment (Doc. 106) is GRANTED.  Judgment in favor of Defendant will be entered separately.

**DATED this 30th day of March, 2012.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**